UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| **Yin Mei Ku,** | : |
|     **Petitioner,** | : |
| | : |
| v. | :   Case No. 3:06cv23 (JBA) |
| | : |
| **William Willingham,** | : |
| **Warden, Federal Correctional** | : |
| **Institution – Camp Danbury, CT** | : |

**RULING AND ORDER [DOC. # 1]**

Petitioner Yin Mei Ku seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2241 declaring unlawful the February 2005 Federal Bureau of Prisons ("BOP") regulations, 28 C.F.R. §§ 570.20-570.21, which restrict the prerelease time inmates can serve in a Community Correction Center ("CCC") to the lesser of 10% of the inmate's time to be served or 6 months (the "10% rule"), and directing Respondent not to consider the 10% rule when selecting the appropriate portion of her sentence that she may serve in a CCC.  See Petition [Doc. # 1].  Petitioner argues that the regulations are an unlawful interpretation of 18 U.S.C. § 3621(b).  For the reasons that follow, the petition will be GRANTED.

**I.   Background**

On November 23, 2004, petitioner Ku was sentenced to a 21-month term of imprisonment with a 3-year term of supervised release upon her guilty plea to a two-count information charging her with conspiracy to commit bank fraud and embezzlement in

1

violation of 18 U.S.C. § 371 and bank fraud in violation of 18 U.S.C. § 1344.  On January 7, 2005 petitioner self-surrendered and was committed to the Federal Correctional Institution at Danbury, Connecticut to commence service of her sentence.  Ku's projected release date, based on accumulated good conduct, is July 15, 2006.  Thus, Ku's 10% date – <u>i.e.</u>, the date the BOP considers Ku to be eligible for transfer to CCC confinement – is May 22, 2006.  By contrast, Ku contends that she should have been considered for CCC transfer six months before her release date, or January 15, 2006.

**II.   Discussion**

    A.   <u>Statutory and Regulatory Background</u>

The authority granted to the BOP by Congress for facility designations and prerelease custody is found in two statutes. 18 U.S.C. § 3621(b) provides:

> **Place of imprisonment**. The Bureau of Prisons shall designate the place of the prisoner's imprisonment. The Bureau may designate any available penal or correctional facility that meets minimum standards of health and habitability established by the Bureau, whether maintained by the Federal Government or otherwise and whether within or without the judicial district in which the person was convicted, that the Bureau determines to be appropriate and suitable, considering--
>
> (1) the resources of the facility contemplated;
> (2) the nature and circumstances of the offense;
> (3) the history and characteristics of the prisoner;
> (4) any statement by the court that imposed the sentence--
> (A) concerning the purposes for which the sentence to imprisonment was determined to be warranted; or

>   (B) recommending a type of penal or correctional
>   facility as appropriate; and
>   (5) any pertinent policy statement issued by the
>   Sentencing Commission pursuant to section 994(a)(2) of
>   title 28.

18 U.S.C. § 3624(c) specifically addresses the prerelease transfer of inmates to CCCs:

>   **Pre-release custody**.  The Bureau of Prisons shall, to
>   the extent practicable, assure that a prisoner serving
>   a term of imprisonment spends a reasonable part, not to
>   exceed six months, of the last 10 per centum of the
>   term to be served under conditions that will afford the
>   prisoner a reasonable opportunity to adjust to and
>   prepare for the prisoner's re-entry into the community.
>   The authority provided by this subsection may be used
>   to place a prisoner in home confinement. The United
>   States Probation System shall, to the extent
>   practicable, offer assistance to a prisoner during such
>   pre-release custody.

Prior to 2002, the BOP considered inmates for prerelease CCC placement for up to 6 months prior to their scheduled release date.  See BOP Program Statement 7310.04 (available at http://www.BOP.gov) ¶¶ 5, 9.  In December 2002, after issuance of a memorandum by the Justice Department's Office of Legal Counsel concluding that the BOP's CCC transfer practice violated § 3624(c), the BOP adopted a policy providing that transfers to CCCs would be limited to the last 10% of an inmate's sentence, not to exceed 6 months.  The 2002 policy was challenged in numerous habeas corpus petitions, two circuit courts invalidated the policy as impermissibly restricting the discretion accorded the BOP by § 3621(b), see Elwood v. Jeter, 386 F.3d 842 (8th Cir. 2004); Goldings v. Winn, 383 F.3d 17 (1st Cir. 2004), and, as the

Second Circuit noted, "'the vast majority' of courts to consider the matter . . . 'held that the [2002] policy was unlawful,'" see United States v. Arthur, 367 F.3d 119, 121 (2d Cir. 2004) (citing Cato v. Menifee, 03civ5795 (DC), 2003 WL 22725524, at *4 (S.D.N.Y. Nov. 20, 2003) (collecting cases)), including this Court, see United States v. Mestel, 03cr276 (JBA), 2004 WL 2472273 (D. Conn. Nov. 2, 2004).

The BOP regulations in dispute in this case became effective on February 14, 2005 and state:

> **What is the purpose of this subpart?**
> (a) This subpart provides the Bureau of Prisons' (Bureau) categorical exercise of discretion for designating inmates to community confinement. The Bureau designates inmates to community confinement only as part of pre-release custody and programming which will afford the prisoner a reasonable opportunity to adjust to and prepare for re-entry into the community.
> (b) As discussed in this subpart, the term "community confinement" includes Community Corrections Centers (CCC) (also known as "halfway houses") and home confinement.
>
> 28 C.F.R. § 570.20.
>
> **When will the Bureau designate inmates to community confinement?**
> (a) The Bureau will designate inmates to community confinement only as part of pre-release custody and programming, during the last ten percent of the prison sentence being served, not to exceed six months.
>
> (b) We may exceed these time-frames only when specific Bureau programs allow greater periods of community confinement, as provided by separate statutory authority (for example, residential substance abuse treatment program (18 U.S.C. 3621(e)(2)(A)), or shock incarceration program (18 U.S.C.

>     4046(c)).

    28 C.F.R. § 570.21.

Petitioner challenges the application of these regulations to her as contrary to the statutory authority granted to the BOP, and requests that this Court order the respondent to consider, in good faith, her transfer to a CCC prior to her 10% date, in accordance with the factors set out in 18 U.S.C. § 3621(b) and pre-2002 BOP practice.

    The February 2005 regulations have been the subject of much litigation in this Circuit and elsewhere, with divided results. All courts in this District known to have considered the issue have declared the regulations invalid. See Martin v. Willingham, -- F. Supp. 2d --, 2006 WL 1236724 (D. Conn. May 5, 2006); Evans v. Willingham, 413 F. Supp. 2d 155 (D. Conn. 2006) (Underhill, J.); Baker v. Willingham, 04cv1923, 2005 WL 2276040 (D. Conn. Sept. 19, 2005) (Dorsey, J.); Gindlesperger v. Willingham, 05cv1752 [Doc. # 27] (D. Conn. Jan. 24, 2006) (Hall, J.). District courts in New York appear divided. See, e.g. Pimentel v. Gonzalez, 367 F. Supp. 2d 365 (E.D.N.Y. 2005) (for petitioner); Drew v. Menifee, 04civ9944 (HBP), 2005 WL 525449 (S.D.N.Y. Mar. 4, 2005) (for petitioner); Lowy v. Apker, 05cv10336 (LBS), 2006 WL 305760 (S.D.N.Y. Feb. 9, 2006) (for respondent); Yip v. Fed. Bureau of Prisons, 363 F. Supp. 2d 548 (E.D.N.Y. 2005) (for respondent).  The Third and Eighth Circuits

recently concluded that the policy was unlawful as abrogating the mandatory consideration of the statutory factors delineated in § 3621(b).  See Fults v. Sanders, 442 F.3d 1088 (8th Cir. 2006); Woodall v. Fed. Bureau of Prisons, 432 F.3d 235 (3d Cir. 2005).[1] For the reasons that follow, the Court agrees with the results reached by those courts that have invalidated the February 2005 policy as inconsistent with the statutory mandate in 18 U.S.C. § 3621(b).

B.   Analysis

Review of an agency's interpretation of its governing statute is typically entitled to deference pursuant to Chevron v. Nat'l Resources Defense Council, Inc., 467 U.S. 837 (1984).  The Chevron analysis and the Court's interpretation of § 3621(b) go hand in hand, because the first inquiry under Chevron is "whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress."  Id. at 842. Only "if the Court determines Congress has not directly addressed the precise question at issue, [i.e.,] if the statute is silent or ambiguous with respect to the specific issue," will the Court

---

[1] The Second Circuit heard argument on this issue in August 2005, but has not issued its opinion.  See Levine v. Apker, 05cv3472 (CLB, 2005 WL 1417134 (S.D.N.Y. May 20, 2005), appeal docketed, No. 05-2590-pr (2d Cir. May 27, 2005).

reach "the question [of] whether the agency's answer is based on a permissible construction of the statute." Id. at 842-43.

Thus, proceeding with the first inquiry, the Court concludes that the intent of § 3621(b) is clear, and requires the BOP to consider the factors articulated therein. The word "may" in the statute refers to the BOP's authority to decide designations of inmates to particular facilities, but as to the factors, the statute is clear that this BOP designation takes place only after "considering" all of the factors provided. See Woodall, 432 F.3d at 245 (also noting that "the use of the word 'and' before the final factor in the five-part list indicates that Congress intended for the BOP to weigh all the factors listed") (emphasis in original); Fults, 442 F.3d at 1091 (the statute "lays out criteria that must be considered by the BOP in making placement determinations) (emphasis added); Evans, 413 F. Supp. 2d at 159-60 (concluding that the factors are mandatory). As Woodall notes, this reading of the plain language of § 3621(b) is buttressed by the legislative history, which provides that the BOP "is 'specifically required' to consider the § 3621 factors – including any statement by the court that imposed the sentence – before it can properly place or transfer an inmate." 432 F.3d at 245-46 (citing S. Rep. No. 98-225 (1983), reprinted in 1984 U.S.C.C.A.N. 3182, 3324-25).

By their terms, the February 2005 regulations constitute a

"categorical exercise of discretion," providing that inmates will not be transferred to a CCC until the later of 10% of time served or 6 months prior to his or her release date, which respondent explained at oral argument reflects the BOP's view that inmates serving longer sentences require longer prerelease programming. By definition a "categorical" approach does not encompass consideration of individualized inmate circumstances.

Respondent relies on Lopez v. Davis, 531 U.S. 230 (2001), as supporting the BOP's categorical exercise of its statutory discretion in the challenged regulations.  In Lopez, the Supreme Court considered a BOP regulation "categorically den[ying] early release to prisoners whose current offense is a felony attended by 'the carrying, possession, or use of a firearm,'" 531 U.S. at 232-33 (citing 28 C.F.R. § 550.58(a)(1)(vi)(B)), which was promulgated pursuant to 18 U.S.C. § 3621(e)(2)(B) providing "that the Bureau of Prisons may reduce by up to one year the prison term of an inmate convicted of a nonviolent felony, if the prisoner successfully completes a substance abuse program," id. The Supreme Court found the BOP's regulation to be a permissible interpretation of 18 U.S.C. § 3621(e)(2)(B) because it served the purpose of categorically defining a class of "violent felons" who were thus ineligible for early release pursuant to the statute, a statutory concept which lacked operative specificity.

This case is thus distinguishable from Lopez because here,

rather than interpreting an undefined concept in the authorizing statute, the BOP's regulation categorically excludes factors which this Court reads the statute as requiring to be considered, by providing that inmates will only be released to CCCs within the last 10% of their sentence, regardless of an individual inmate's personal history and characteristics and the circumstances of his or her crime of conviction or the individual sentencing purpose.  In other words, while on its face § 3621(b) requires the BOP to consider the factors set out, the BOP's 10% rule categorically provides that the BOP will not do so.  Thus, the regulation fails to give effect to the clear intent of the statute.

### C.   Remedy

This Court having concluded that the 10% rule, 28 C.F.R. §§ 570.20-570.21, is an invalid exercise of BOP statutory discretion, petitioner's habeas petition is granted to the extent respondent must consider petitioner for transfer to a CCC without regard to the 10% rule and in accordance with § 3621(b) and the BOP's pre-2002 practices.  Because time is of the essence, given that Ku's 6-month date has already passed and her 10% date is imminent, the Court directs respondent to complete the process in good faith immediately.

### III. Conclusion

For the foregoing reasons, Ku's petition [Doc. # 1] is

```
     GRANTED.   The Clerk is directed to close this case.

                              IT IS SO ORDERED.

                              _____/s/_____
                              Janet Bond Arterton
                              United States District Judge
```

**Dated at New Haven, Connecticut this 12th day of May, 2006.**